Latarsha Uneac **WILLIAMS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–03–00592–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 24, 2004.

Mary B. Hennessy, Brenham, for Appellant.

Renee Ann Mueller, District Attorney, Washington Burleson County, Joan E. Scroggins, Assistant District Attorney, Burleson County, Caldwell, for Appellee.

Panel consists of Chief Justice RADACK and Justices KEYES and ALCALA.

## OPINION

EVELYN V. KEYES, Justice.

Appellant, Latarsha Uneac Williams, pleaded guilty, without an agreed recommendation on punishment, to the offense of murder. The court ordered a pre-sentence investigation, and reset the matter for a punishment hearing. Following the hearing, the trial court found appellant guilty and assessed punishment at 25 years' confinement. In three points of error, appellant contends that she is entitled to a new punishment hearing because the trial court erred by admitting (1) victim-impact and victim-character testimony, (2) autopsy photographs, and (3) medical records not properly authenticated. We affirm.

## Background

In August 2001, a fight broke out in a bar. Appellant fatally stabbed the complainant, Craig McCullough, in the heart. An autopsy was performed, at which a Burleson County Sheriff took several photographs.

Appellant pleaded guilty without an agreed recommendation as to punishment. At the punishment hearing that followed, appellant testified that the fight started when her brother hit the complainant because the complainant called her a name. She testified that she watched the fight, that several members of the complainant's family joined the fight, and that she was angry. At some point during the fight, her boyfriend gave her a knife. She testified that the complainant swung a pipe at her; she ducked and stuck her arm out with the knife in her hand.

On cross-examination, appellant testified that she did not mean to hurt the complainant, that she did not stab him "like everybody keeps making it sound," and that the knife "just went into him." She admitted that she lied to the police during the initial investigation when she said she was nowhere near the man holding the pipe. She then contradicted the story she gave for the pre-sentence investigation report, in which she said she was getting up from the ground when the complainant was stabbed. She testified, instead, that

she was falling backward when the complainant "hit" the knife.

The autopsy photographs were offered after the medical examiner's report was admitted into evidence by agreement of the parties. One photograph shows the complainant's upper body on the autopsy table, with his wound visible. The second photograph is a close-up of the complainant's chest being pulled open enough to show the length of the wound. The third photograph shows the complainant's heart, with the wound visible, being held over his open chest. The fourth photograph shows the complainant's heart, on a tray, being held open to show the depth of the wound.

In addition, the State presented the testimony of two registered nurses who had treated appellant's boyfriend for a stab wound to his arm caused by appellant in a separate incident. The first nurse explained that she was in the emergency room when the man was brought in and that he was unresponsive due to blood loss. The nurse testified that appellant told the trauma team and a police officer that she had cut her boyfriend with a kitchen knife after he hit her. Appellant's boyfriend was transferred to another hospital where the second registered nurse treated him for the stab wound.

Finally, the complainant's mother testified that her son was a sweet young man, that he had played little league, that he loved everybody, and that he had joined the Marines. She testified that the complainant never got into fights and was never a problem at school. She also stated that his death ripped her apart.

## Standard of Review

■ In each of her points of error, appellant complains about the admissibility of evidence at the punishment stage of her trial. Article 37.07, section 3(a)(1) of the Code of Criminal Procedure governs the admissibility of evidence during the punishment phase. TEX.CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1) (Vernon Supp.2004–2005); see Boone v. State, 60 S.W.3d 231, 238 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd). It provides that "[r]egardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the State and the defense as to any matter the court deems relevant to sentencing...." TEX.CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1) (Vernon 2003). The Court of Criminal Appeals has explained that "because the jury's decision in a non-capital case does not involve a discrete finding, the relevance of evidence cannot be determined by a deductive process but rather is a function of policy." Erazo v. State, 144 S.W.3d 487, 491 (Tex. Crim.App.2004) (citing Rogers v. State, 991 S.W.2d 263, 265 (Tex.Crim.App.1999)). The underlying policy considerations encompass "(1) giving complete information to the jury to allow it to tailor an appropriate sentence for the defendant; (2) the rule of optional completeness; and (3) whether the appellant admits the truth during the sentencing phase." Id. (footnotes omitted). Consequently, relevant evidence is any evidence that aids the fact finder under the particular circumstances. Id.

■ A trial court has wide discretion in deciding the admissibility of evidence presented at the punishment phase of trial. Henderson v. State, 29 S.W.3d 616, 626 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd). We will not overturn the trial court's decision regarding the admissibility of relevant evidence unless it is an abuse of discretion by being outside the zone of reasonable disagreement. See Flores v. State, 125 S.W.3d 744, 746 (Tex.App.-Houston [1st Dist.] 2003, no pet.); Boone, 60 S.W.3d at 239, 240.

## Discussion

### *Admissibility of Autopsy Photographs*

In her second point of error, appellant argues that the trial court erred in admitting autopsy photographs of the complainant at the punishment hearing over appellant's objection. The State offered four autopsy photographs in connection with the testimony of a lieutenant with the Burleson County Sheriff's Office. The lieutenant took the photographs while the autopsy was being performed by the medical examiner. Appellant objected that the autopsy photographs were prejudicial. The judge overruled the objection. The officer testified that the photographs demonstrated the depth of the wound to the victim and the damage to the victim's heart. He also testified that the photographs confirmed the autopsy report.

Like other demonstrative evidence, photographs should assist the fact finder with its decision whether that is deciding guilt or punishment; a photograph should add something that is "relevant, legitimate, and logical to the testimony that accompanies it" and that assists the fact finder in its decision-making duties. *Erazo,* 144 S.W.3d at 491. If the elements of a photograph are genuinely helpful, the photograph is inadmissible only if its emotional and prejudicial aspects substantially outweigh the helpful aspects. *Id.* at 491–92. In general, photographs are admissible if verbal testimony about the matter shown in the photographs would be admissible and the probative value is not outweighed by rule 403 counterfactors. *Threadgill v. State,* 146 S.W.3d 654, at 670–71 (Tex.Crim.App. 2004); *see* Tex.R. Evid. 403.

Here, the autopsy photographs supplied complete information regarding the nature of the wounds inflicted on the complainant by appellant and corresponding with the description of the injuries in the autopsy report that was admitted into evidence. This information was helpful to the court in devising an appropriate sentence because appellant had repeatedly changed her story about the complainant's death and had denied that she intended to stab the complainant. We conclude that the autopsy photographs showing a stab wound to the complainant's heart were probative of the nature of the wound inflicted on him by appellant and that they were helpful to the court in tailoring an appropriate sentence for appellant. *See Erazo,* 144 S.W.3d at 491. We, therefore, must determine whether the relevance of the autopsy photographs was outweighed by their prejudicial effect.

A trial court may consider numerous factors when determining whether the probative value of relevant photographs is substantiality outweighed by the danger of unfair prejudice. *See Hayes v. State,* 85 S.W.3d 809, 815 (Tex.Crim.App. 2002). The trial court should consider the number of photographs offered, their detail, their gruesomeness, their size, whether they are close-up, whether they are in black and white or color, and whether the body is clothed or naked. *See Wyatt v. State,* 23 S.W.3d 18, 29 (Tex.Crim.App. 2000) (citing *Long v. State,* 823 S.W.2d 259, 271 (Tex.Crim.App.1991)). While autopsy photographs are usually admitted, they should be excluded if they show mutilation to the victim caused by the autopsy. *Rojas v. State,* 986 S.W.2d 241, 249 (Tex. Crim.App.1998). However, if the disturbing nature of the photographs is due primarily to the injures caused by the defendant, the changes to the victim's body caused by the autopsy are of minor significance. *See Hayes,* 85 S.W.3d at 816 (citing *Santellan v. State,* 939 S.W.2d 155, 173 (Tex.Crim.App.1997)) (holding that photograph depicting victim's skin pulled back

to show extent of the gunshot wound to her face was admissible; pulling back victim's skin did not make evidence more gruesome); *Salazar v. State*, 38 S.W.3d 141, 151–52 (Tex.Crim.App.2001) (holding that autopsy photographs showing internal organs removed from victim's body were probative because they showed that internal injuries to victim did not support appellant's version of incident).

■ Here, four photographs are the subject of appellant's complaint. None of the photographs show the complainant's entire body. One shows the complainant, shirtless from his waist up, with his wound clearly visible. The second photograph is a close-up of the stab wound. The third shows the complainant's heart being held outside his body and over his chest. The fourth shows the heart on a tray being spread open to show the depth of the stab wound. Each photograph shows the stab wound in greater detail than the last. The photographs are in color and are roughly six inches by eight inches. The photographs show minimal damage to the complainant's body caused from the autopsy. The photographs are probative as to the extent and nature of the complainant's injuries. We hold that the autopsy photographs are relevant and are not unduly prejudicial to the sentencing trial court judge.

Appellant's second point of error is overruled.

### Admissibility of Victim-impact and Victim-character Testimony

In her first point of error, appellant contends that the trial court erred by allowing the complainant's mother to testify at the punishment phase of appellant's trial and over appellant's objection regarding the complainant's character and the impact of the complainant's death on her. Appellant argues that the complainant's character is not admissible at the punishment phase unless it is placed in issue by the defendant. She further argues that the impact of the complainant's death on his mother is not relevant to any issue in this case.

Appellant relies on *Cantu v. State*, 939 S.W.2d 627 (Tex.Crim.App.1997), and *Smith v. State*, 919 S.W.2d 96 (Tex.Crim. App.1996), to argue that a complainant's character is not admissible unless it is placed in issue by the defendant. The *Cantu* decision is, however, distinguishable in that the victim-impact and victim-character evidence in that case pertained to an extraneous victim, not to the complainant named in the indictment. *Cantu*, 939 S.W.2d at 637. Here, appellant is complaining about the victim-impact and character evidence regarding the complainant. Thus, *Cantu* does not apply. Nor does *Smith* apply; rather, *Smith* was abrogated by *Mosley v. State*, 983 S.W.2d 249, 261–62 (Tex.Crim.App.1998) (holding that both victim-impact and victim-character evidence are admissible).

■ The Court of Criminal Appeals held in *Mosley* that, in a death penalty case, "[b]oth victim impact and victim character evidence are admissible, in the context of the mitigation special issue, to show the uniqueness of the victim, the harm caused by the defendant, and as rebuttal to the defendant's mitigating evidence." *Mosley*, 983 S.W.2d at 261–62. However, "[w]hen the focus of the evidence shifts from humanizing the victim and illustrating the harm caused by the defendant to measuring the worth of the victim compared to other members of society, then the State exceeds the bounds of permissible testimony." *Id.* at 262. *Mosley* has since been applied to non-capital cases. In *Salazar v. State*, the Court of Criminal Appeals held that when the probative value of victim-impact evidence out-

weighs the prejudicial effect, victim-impact evidence is admissible in the punishment phase of non-capital offense trials. 90 S.W.3d 330, 335–36 (Tex.Crim.App.2002).

■ In general, victim-character and victim-impact evidence may be admissible at the punishment stage when the evidence bears on the defendant's personal responsibility and moral culpability. *Salazar*, 90 S.W.3d at 335; *Mosley*, 983 S.W.2d at 261–62. Such evidence is designed to show the victim's "uniqueness as an individual human being" and to "inform the sentencing authority about the specific harm caused by the crime in question." *Salazar*, 90 S.W.3d at 335 (quoting *Payne v. Tennessee*, 501 U.S. 808, 823, 111 S.Ct. 2597, 2607, 115 L.Ed.2d 720 (1991)). *Victim-character* evidence reminds the sentencing authority that the person whose life was taken was a unique human being; *victim-impact* evidence is a reminder that murder has foreseeable consequences on the community and the victim's survivors. *Id.* However, victim-impact and character evidence can become unfairly prejudicial through sheer volume. *Id.* at 336; *Mosley*, 983 S.W.2d at 262–63. Thus, in deciding whether the probative value of the evidence is outweighed by unfair prejudice, the trial court should consider "(1) how probative is the evidence; (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence." *Salazar*, 90 S.W.3d at 336.

■ Here, only the complainant's mother, Jane McCullough, testified to victim-impact and victim-character evidence. She testified that the victim was a sweet young man, who loved everybody, was a good son, had been in the Marines, was never a problem in school, and never got into fights. She also testified that knowing that she would not see him again ripped her apart. The testimony was probative because it explained the uniqueness of the complainant and the harm caused by his death, thus relating to the defendant's moral culpability and responsibility.

Jane McCullough's testimony consisted roughly of seven pages out of 152 pages of testimony during the State's portion of the case. Therefore, the testimony was not prejudicial based on its volume. No other witness testified to the impact of the victim's death or the victim's character. This testimony was thus the only probative evidence on point; it did not measure the worth of the complainant compared to other members of society; nor did it seek to impress the judge in an irrational, but nevertheless indelible way. Based on this record, we conclude that the admission of the testimony was relevant and did not unfairly prejudice appellant. Accordingly, the trial court did not abuse its discretion by allowing this testimony.

We overrule appellant's first point of error.

### Admissibility of Medical Records

In her third point of error, appellant argues that the trial court erred in admitting medical records over her objection that they were hearsay and were not properly authenticated.

■ We review a trial judge's decision to admit or exclude evidence under an abuse of discretion standard. *See Salazar*, 38 S.W.3d at 151. The admissibility of an out-of-court statement under an exception to the general hearsay exclusion rule is within the trial court's discretion. *Lawton v. State*, 913 S.W.2d 542, 553 (Tex.Crim. App.1995). The decision of the trial court will be affirmed if the decision is within the zone of reasonable disagreement on the particular issue. *See Salazar*, 38 S.W.3d

at 151; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990).

For hearsay to be admissible, it must fit into an exception provided by the Rules of Evidence. One such exception is for "records of regularly conducted activity," more commonly known as the "business records exception." TEX.R. EVID. 803(6). Rule 803(6) provides that a document is properly admitted into evidence if it is established by the testimony of the custodian of records, by the testimony of other qualified witness, or by an affidavit that complies with rule 902(10). *Id.; see* TEX.R. EVID. 902(10). Rule 902 requires that an affidavit attesting to business records state that the document (1) was made at or near the time of the events; (2) by a person with knowledge of the events or by a person with knowledge obtained by information transmitted from a person with knowledge of the events; and (3) kept in the course of a regularly conducted business activity. TEX.R. EVID. 902(10). The witness laying the predicate for the admission of a business record does not have to have personal knowledge about the contents of the record, but must have personal knowledge about how the records are prepared. *See Brooks v. State*, 901 S.W.2d 742, 746 (Tex.App.-Fort Worth 1995, pet. ref'd, pet. dism'd); *Butler v. State*, 872 S.W.2d 227, 238 (Tex.Crim.App.1994).

Here, a registered nurse testified that she treated appellant's boyfriend for a stab wound in 2000. She testified that she did not recall the incident, but her memory could be refreshed by the medical records. She testified that she recognized the medical record, that she was one of the registered nurses involved in the trauma, that her handwriting was on the record, that she had probably directed a co-worker to take notes during the trauma or shortly after the trauma, and that she signed the bottom of the record. The nurse testified that the medical records were kept as part of the records of St. Joseph's Hospital. The registered nurse's testimony laid the proper foundation and qualified the medical records as business records. *See Moyer v. State*, 948 S.W.2d 525, 528 (Tex.App.-Fort Worth 1997, pet. ref'd) (finding that foundation for admitting business record was laid by paramedic who testified he wrote the incident report at or near time he treated victim; that he wrote some entries from his own personal knowledge and remaining entries as they were told to him by someone with personal knowledge; and that it was regular business practice to keep and make such incident report).

We hold that the trial court did not err in admitting the medical records under the business records exception.

We overrule appellant's third point of error.

We affirm the trial court's judgment.