Opinion issued December 20, 2007








 










In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00579-CR

____________


KENYON DEMAR HURD, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 344th District Court

Chambers County, Texas

Trial Court Cause No. 13792






MEMORANDUM OPINION

 Appellant, Kenyon Demar Hurd, pleaded guilty to the offense of manslaughter (1)
without an agreed punishment recommendation from the State. He also pleaded true
to the allegations in two enhancement paragraphs that he had two prior felony
convictions. The trial court, after finding that appellant had used and exhibited a
deadly weapon, a motor vehicle, during the commission of the offense, assessed his
punishment at confinement for thirty-five years. In two points of error, appellant
contends that the trial court erred in admitting into evidence inflammatory and
prejudicial photographs and "in failing to admonish" appellant about "the correct law
on parole eligibility requirements." 

 We affirm.

Background

 After appellant entered his guilty plea, the trial court reset the case for
preparation of a presentence investigation ("PSI") report. At the subsequent hearing,
Texas Department of Public Safety Trooper B. Henry testified that on June 23, 2003,
appellant drove his car southbound on State Highway 124 in Chambers County and
caused it to collide with a motorcycle driven by the complainant, James L. Pierce,
who was traveling northbound.

 John Andrew Montgomery testified that he was a passenger in a motor home
traveling southbound on the two-lane highway and he saw appellant drive his car up
on Montgomery's right, "on the shoulder of the road at a high rate of speed." As
appellant drove his car across the lane in front of Montgomery, the rear quarter panel
of appellant's car struck the motor home, causing appellant's car to "shoot just almost
straight across the highway." Montgomery, sitting on the passenger side of the motor
home, looked out of the driver's window and saw the complainant's motorcycle
collide with appellant's car. The driver of the motor home stopped, and Montgomery
got out to see if anyone was injured. Montgomery went to the complainant and saw
that he was dead. He then approached appellant and the passenger in appellant's car. 
Despite being able to see the destruction that he had caused, appellant acted "just like
nothing happened, just no remorse, no reaction, just like nothing." 

 James Maley, who witnessed the collision while riding on a motorcycle with
his wife, Debra Maley, testified that appellant appeared "[l]ike he didn't care, like he
was trying to say that the bike jumped over in his lane and hit him instead of him
causing the accident." Maley explained that another motorcycle rider, Debbie
Sherman, had been "clipped in the wreck." Sherman had "blood all over her," and
her motorcycle was "totaled out." Part of the complainant's body and motorcycle had
hit Sherman's motorcycle. 

 Chambers County Sheriff Deputy T. Henry testified that he arrived at the scene
approximately fifteen minutes after the collision, and appellant "was basically in
another world." Appellant "was dazed, looked confused, glassy-eyed, [and] was not
sure what exactly happened." Although he did not immediately detect the presence
of alcohol on appellant, he noticed, after speaking with appellant, that he was not able
to answer his questions clearly and he smelled "an odor of an alcoholic beverage." 

 Peggy Richard, appellant's mother, testified that appellant "has shown a great
deal of remorse" and that the collision "has impacted him a great deal."

Photographic Evidence

 In his first point of error, appellant contends that the trial court erred in
admitting into evidence "inflammatory and prejudicial" photographs, which
"portrayed body parts of the victim and parts of the motorcycle in various places." 
He argues that because "[t]hese matters were well-described by [Deputy] Henry
during his direct examination," they "added nothing but prejudice." He asserts that
the photographs were not relevant as there were "no disputed fact issues" and the
photographs were "not necessary to solve any fact issue."

 At the hearing, during Deputy Henry's testimony, the State offered into
evidence six crime scene photographs, labeled State's exhibits 3, 4, 5, 6, 7, and 8,
which depicted appellant's car, the complainant's motorcycle, and the complainant's
body. Appellant objected to exhibits 5, 6, 7, and 8, arguing that these photographs
were prejudicial because of their gruesome nature and because they depicted matters
discussed "in the medical report as well as the report of the police officer." He
asserted that the purpose of the pictures was "basically to inflame and incite emotion
and nothing more," the "very graphic and horrible pictures . . . do nothing to add to
the probative value," and the prejudicial photographs had "already been explained
thoroughly by the police officer's report as well as the medical report." In response,
the State noted that no medical report existed. The trial court overruled appellant's
objections and admitted the photographs into evidence.

 We review a trial court's decision to admit evidence for an abuse of discretion. 
Narvaiz v. State, 840 S.W.2d 415, 429 (Tex. Crim. App. 1992). The evidentiary rules
require that photographs be legally relevant to the solution of a disputed fact issue. 
Lanham v. State, 474 S.W.2d 197, 199 (Tex. Crim. App. 1972). We note that crime
scene photographs are almost always relevant because they "depict the reality of [the]
offense," and may show the manner in which it occurred. Chamberlain v. State, 998
S.W.2d 230, 237 (Tex. Crim. App. 1999).

 "Regardless of the plea and whether the punishment be assessed by the judge
or the jury, evidence may be offered by the [S]tate and the defendant as to any matter
the court deems relevant to sentencing." Tex. Code Crim. Proc. Ann. art. 37.07, §
3(a)(1) (Vernon Supp. 2007). Relevant evidence may be excluded if its probative
value is substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the fact-finder, or by considerations of undue delay or needless
presentation of cumulative evidence. Tex. R. Evid. 403. 

 Rule 403, however, favors admissibility and contains a presumption that
relevant evidence is more probative than prejudicial. Hayes v. State, 85 S.W.3d 809,
815 (Tex. Crim. App. 2002). A Rule 403 analysis should include, but is not limited
to, the following factors: (1) how probative the evidence is, (2) the potential of the
evidence to impress the fact-finder in some irrational, but nevertheless indelible way,
(3) the time the proponent needs to develop the evidence, and (4) the proponent's
need for the evidence. Montgomery v. State, 810 S.W.2d 372, 389-90 (Tex. Crim.
App. 1991) (op. on reh'g). In determining the prejudicial effect of photographs, a
court should consider (1) the number of photographs, (2) the size of the photographs,
(3) whether the photographs are in color or black and white, (4) the detail shown in
the photographs, (5) whether the photographs are gruesome, (6) whether a body
shown in the photographs is naked or clothed, and (7) whether the photographed body
has been altered since the crime in some way that might enhance the gruesomeness
of the photograph to the appellant's detriment. Reese v. State, 33 S.W.3d 238, 241
(Tex. Crim. App. 2000). Photographs provide powerful visual evidence of the
offense, and a trial court does not abuse its discretion in admitting photographs of a
victim into evidence merely because they may be gruesome. Sonnier v. State, 913
S.W.2d 511, 519 (Tex. Crim. App. 1995).

 In Williams v. State, the defendant fatally stabbed the complainant during a bar
fight. 176 S.W.3d 476, 479 (Tex. App.--Houston [1st Dist.] 2004, no pet.). During
the punishment phase of trial, the trial court admitted four autopsy photographs over
the defendant's objection. Id. at 481. These four photographs depicted (1) the
complainant's wound, (2) a close-up of the wound, (3) the complainant's heart being
held over his body, and (4) the complainant's heart on a tray, spread apart to show the
depth of the knife wound. Id. at 482. On appeal, the defendant alleged that the trial
court erred in admitting these four photographs because the probative value
outweighed the danger of unfair prejudice. Id. at 481. The trial court admitted the
photographs, even though an officer testified about the complainant's heart damage
and an autopsy report confirmed the photographs' depictions. Id. This Court
overruled the defendant's point of error, reasoning that the photographs helped to
determine the nature of the complainant's wound and to assess the defendant's
sentence. Id. at 481-82. We also stated that the photographs were helpful "because
[the defendant] had repeatedly changed her story about the complainant's death." Id.
at 481.

 Here, State's exhibits 5, 6, and 7, taken from different angles, depict the
complainant's body immediately after the accident, and State's exhibit 8 is a
photograph of the complainant's arm in the backseat of appellant's car. 

 Like the photographs in Williams, State's exhibits 5 through 8 were relevant
to assessing appellant's sentence, especially in light of the evidence of appellant's
complete lack of remorse immediately after the collision. Moreover, we conclude
that the exhibits are not cumulative in light of Deputy Henry's testimony because the
exhibits demonstrate the reality of the offense and accurately depict the scene. See
Chamberlain, 998 S.W.2d at 237. Additionally, appellant does not contend that these
photographs are any more gruesome than the crime scene as it was found by police
officers. Accordingly, we hold that the trial court did not abuse its discretion in
admitting these photographs into evidence.

 We overrule appellant's first point of error.

Parole Eligibility Admonishments

 In his second point of error, appellant essentially argues that his plea was not
"knowing and voluntary" because his trial counsel "misstated the law as to the
minimum time [appellant] would have to serve if an affirmative finding of a deadly
weapon [was] made." Appellant complains of the following statement made by his
trial counsel:

Further you understand that if you are found guilty either of intoxication
manslaughter or aggravated assault with a deadly weapon and there is
no affirmative finding of the use or exhibition of a deadly weapon,
whatever sentence you receive, you will have to serve one-half of that
sentence day for day before you become eligible for consideration for
parole. Do you understand that?(Emphasis added). Appellant argues that because his trial counsel read the
misstatement of the law into the record and neither the State nor the trial court
objected, this misstatement became a "rule of law." He asserts that "[a]lthough the
parole eligibility requirements are not required as part of the [trial] court's
admonishments" under article 26.13 of the Texas Code of Criminal Procedure, "once
an attempt is made to admonish [a] defendant, that attempt must be a correct
recitation of the law, otherwise the defendant will not have a full and complete
understanding of the consequences of his plea." See Tex. Code Crim. Proc. Ann.
art. 26.13 (Vernon Supp. 2007).

 Generally, an inmate is eligible for parole "when the inmate's actual calendar
time served plus good conduct time equals one-fourth of the sentence imposed or 15
years, whichever is less." Tex. Gov't Code Ann. § 508.145(f) (Vernon Supp. 2007). 
However, when an inmate has committed one of a litany of serious offenses, or an
affirmative finding is made that a deadly weapon was "used or exhibited during the
commission of a felony offense," the inmate is not eligible for parole until "the
inmate's actual calendar time served, without consideration of good conduct time,
equals one-half of the sentence or 30 calendar years, whichever is less . . . ." Id. §
508.145(d) (Vernon Supp. 2007); Tex. Code Crim. Proc. Ann. art. 42.12, §
3g(a)(1)-(2) (Vernon 2007).

 Appellant does not explain how his trial counsel's misstatement that if no
affirmative finding of the use or exhibition of a deadly weapon was made by the trial
court, appellant would become eligible for parole when he had served one-half of his
sentence, affected his decision to plead guilty. Rather, he seems to assert that any
misstatement will make a plea involuntary.

 However, the Texas Court of Criminal Appeals has expressly held that the
"erroneous advice of counsel on the subject of parole eligibility [will] not render [a]
plea involuntary." Ex parte Evans, 690 S.W.2d 274, 279 (Tex. Crim. App. 1985). 
Appellant, without any reference to authority, argues that here, unlike in Evans, his
trial counsel's misstatement about parole eligibility "was not given as advice but was
intended as a rule of law." We conclude, however, that just because his trial counsel
misstated the law on the record does not change the fact that it was indeed "erroneous
advice."

 More importantly, the reason that the Texas Court of Criminal Appeals held
that such erroneous advice does not render a guilty plea involuntary is because of "the
speculative nature of parole attainment." Id. Because parole is a speculative
proposition, contingent upon many factors unknown and nonexistent at the time of
a guilty plea, only if a defendant's "understanding of his parole eligibility is
manifested as an affirmative part of the plea bargain and that understanding is relied
on as an essential part of the quid pro quo for pleading guilty," will the defendant's
"plea [be] involuntary if that part of the plea bargain is not or cannot be carried out." 
Id.

 Here, the erroneous advice of appellant's trial counsel was not manifested in
appellant's plea bargain. Accordingly, we hold that the erroneous advice of
appellant's trial counsel did not render appellant's plea involuntary.

 We overrule appellant's second point of error.Conclusion

 We affirm the judgment of the trial court.





 Terry Jennings

 Justice


Panel consists of Justices Nuchia, Jennings, and Keyes.


Do not publish. Tex. R. App. P. 47.2(b). 
1. See Tex. Penal Code Ann. § 19.04 (Vernon 2003).