NO. 07-08-0088-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MARCH 6, 2009

_____

BRANDON MARSAE HILL, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 57,073-E; HONORABLE ABE LOPEZ, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Following a plea of not guilty, Appellant, Brandon Marsae Hill, was convicted by a

jury of sexual assault, enhanced, and punishment was assessed at twenty-one years

confinement and a $500 fine.  In presenting this appeal, counsel has filed an *Anders*[1] brief in support of a motion to withdraw.  We grant counsel's motion and affirm.

In support of her motion to withdraw, counsel certifies she has conducted a conscientious examination of the record and, in her opinion, the record reflects no potentially plausible basis to support an appeal.  *Anders v. California*, 386 U.S. 738, 744-45, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); *In re Schulman*, 252 S.W.3d 403, 406 (Tex.Crim.App. 2008).  Counsel has  discussed why, under the controlling authorities, the appeal is frivolous.  *See High v. State*, 573 S.W.2d 807, 813 (Tex.Crim.App. 1978).  Counsel has also demonstrated that she has complied with the requirements of *Anders* and *In re Schulman* by (1) providing a copy of the brief to Appellant, (2) notifying him of his right to file a pro se response if he desired to do so, and (3) informing him of his right to file a pro se petition for discretionary review.  *In re Schulman*, 252 S.W.3d at 408.[2]  By letter, this Court granted Appellant thirty days in which to exercise his right to file a response to counsel's brief, should he be so inclined.  *Id.* at n.23.  Appellant did not file a response. Neither did the State favor us with a brief.

---

[1]*Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

[2]Notwithstanding that Appellant was informed of his right to file a pro se petition for discretionary review upon execution of the *Trial Court's Certification of Defendant's Right of Appeal*, counsel must comply with Rule 48.4 of the Texas Rules of Appellate Procedure which provides that counsel shall within five days after this opinion is handed down, send Appellant a copy of the opinion and judgment together with notification of his right to file a pro se petition for discretionary review.  *In re Schulman*, at 408 n.22 & at 411 n.35.

## Background Facts

In the evening hours of August 12, 2006, the victim and some friends gathered for drinks at the home of Candice Daily.[3] The victim became intoxicated. Nevertheless, she insisted on going to an after hours club in the early morning hours of August 13. Her friend, Richy Captain, drove her there and others followed in their vehicles. Appellant and two of his friends, Ryhan Johnson and Harold Williams ("Johnny"), met the group there. The victim was very intoxicated and feeling sick and Captain decided to drive her back to Daily's house. According to Captain, the victim was staggering and fell while trying to get into the car.

Captain testified that when they arrived at Daily's house, he carried her in and took her to the back bedroom. A group was still gathered on Daily's porch drinking. The victim asked to use the bathroom and then Daily undressed her and put her in shorts and a shirt. The victim was placed in bed to sleep off her intoxicated state. According to several witnesses, the victim was passed out, non-responsive, and appeared "lifeless." Daily's three year old child was also in the back bedroom on the bed with the victim.

A former co-worker and friend of the victim's, Lacy Wipkey, testified that she went to the bedroom to check on her friend and witnessed Appellant having sexual intercourse with the victim. She immediately alerted Captain, who proceeded to the bedroom and also

---

[3]The evidence is disputed on the number of people present–as few as five to fifteen or twenty.

3

observed Appellant having sex with the victim. Captain testified that the victim was not awake or responsive. Stunned and visibly upset, he left the bedroom to collect his thoughts. Captain then returned to the bedroom where he witnessed Appellant's friend Johnson having sex with the victim while Appellant was still in the room. He escorted them out and locked the bedroom door. Appellant went out on the front porch, and Captain and Johnson argued in the kitchen.

Approximately ten minutes later, Daily came from the bedroom demanding everyone leave because she discovered Johnson having sex with the victim. The back window was open and the screen had been ripped off. She immediately threw everyone out of her house, except for Captain, Wipkey, and another friend, and called the police.

When the police arrived, Officer Scott Acker attempted to wake the victim by shaking her several times and performing a sternum rub.[4] According to the officer, she never responded to the procedure. Later, while he was questioning people, the victim "popped up off the bed and hit the wall and was trying to hold herself up between the wall and the bed." He called paramedics to respond to a possible alcohol poisoning and rape exam. The victim was taken to the hospital.

During questioning by Officer Acker, Captain, Wipkey, and Daily identified Appellant and Johnson as the persons who had sex with the victim. When contacted by the officer,

---

[4]He testified that he is trained to perform a sternum rub, which is a painful procedure, on persons who are unconscious or passed out to get them to respond.

4

the sexual assault nurse examiner (SANE) on duty at the hospital when the victim was brought in, explained that she was unable to start the rape exam because the victim was too intoxicated to consent. Her blood alcohol level was .32 and she had been given intravenous fluids to hydrate her and sober her up.

Hours later, at approximately 9:15 a.m., when Danielle Livermore was on duty as the SANE, the victim consented to the rape exam. Among other items, Livermore collected forensic evidence from the victim's vaginal and rectal area. A forensic scientist with the Texas Department of Public Safety who tested the evidence testified that, to a reasonable degree of scientific certainty, Appellant was a DNA contributor on the anal swab and Johnson was a DNA contributor on the vaginal swab.

The victim and others testified that the victim did not have a relationship with Appellant and in fact, she did not know him. The victim also testified that she remembered being drunk and feeling sick at the after hours club. After she was taken back to Daily's house, she had a lucid moment and recalled going to the bathroom. She also remembered seeing Captain and Daily there. Her next memory was waking up in the hospital and Nurse Livermore asking if she could perform a rape exam, to which she consented.

Appellant was indicted for intentionally and knowingly causing the penetration of the anus of the victim with his sexual organ without her consent. After he was convicted by a jury, he appealed and his appellate attorney pursued this *Anders* appeal.

5

By the *Anders* brief, counsel presents five potential issues and then explains why no reversible error exists. The issues are whether: (1) Appellant's constitutional and statutory rights were violated by the prosecutor's comments during voir dire regarding his right to remain silent; (2) Appellant's DNA sample was properly seized and admitted into evidence; (3) State's Exhibit 6, which contains the victim's medical records, was properly admitted; (4) whether the evidence is legally and factually sufficient to support Appellant's conviction; and (5) whether trial counsel rendered ineffective assistance in failing to subpoena Harold Williams ("Johnny").

**Potential Issues**

**I. Prosecutor's comments during voir dire on a defendant's failure to testify**

During voir dire, the prosecutor commented:

> I guess the basis of the question is, is there a way that I can get to that level in a case proving to you all of the elements if you never hear from the Defense? Or do you say, gosh, I've got to hear from him. I want to know his side?

> \* \* \*

> why wouldn't somebody want to take the stand and talk about their case?

At that moment, defense counsel objected based on the United States Constitution and the prosecutor was asked to rephrase. He continued:

6

[w]hy would somebody choose to exercise their right?  You understand it's not a definite prohibition.  We don't say you can't take the stand.  We say you have the right to exercise.  You can say, I don't want to take the stand. Right?

Defense counsel again objected, and the trial court overruled the objection.

A prosecutor's comment that refers to an accused's failure to testify violates the accused's Fifth Amendment right against self-incrimination.  *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex.Crim.App. 2001).  However, to violate that right, the offending language must be viewed from the jury's standpoint and the implication that the comment referred to the defendant's failure to testify must be clear.  *Bustamante*, 48 S.W.3d at 764.  It is not sufficient that the language might be construed as an implied or indirect allusion.  *Id*.  The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify.  *Id.*

Comments such as those from the prosecutor in the instant case, which occur prior to testimony in the case being closed, cannot be held to refer to a failure to testify which has not yet occurred.  *See Reynolds v. State*, 744 S.W.2d 156, 160 (Tex.App.–Amarillo 1987) (citing *McCarron v. State*, 605 S.W.2d 589, 595 (Tex.Crim.App. 1980)).  Because the comments by the prosecutor were made during voir dire, he could not have known

whether Appellant was going to testify. *See McCary v. State*, 477 S.W.2d 624, 627 (Tex.Crim.App. 1972). We agree with counsel's assessment of this issue.

## II. Appellant's DNA sample was properly seized and admitted into evidence

While Appellant was in jail, samples of his DNA were seized pursuant to a search warrant for "personal property." Trial counsel filed a motion to quash alleging that fluids, saliva, and blood are not "personal property" that may properly be seized pursuant to chapter 18 of the Texas Code of Criminal Procedure. Article 18.02 of the Code authorizes a search warrant for "property" and also for "items." *See id.* at (1) and (10). Although it may have been more appropriate to describe the fluids as "items," the statute authorizes seizure of either as evidence. The search warrant's reference to Appellant's fluids as "property" rather than "items" did not affect the adequacy of the description or otherwise render the warrant invalid. *See Falco v. State*, No. 03-08-00206-CR, 2009 WL 349141, at *3 (Tex.App.–Austin Feb. 11, 2009, no pet. h.). We agree with counsel that the seizure of Appellant's fluids pursuant to a valid search warrant presents no reversible error.

## III. State's Exhibit 6 was properly admitted

State's Exhibit 6 contains, among other medical records of the victim, the SANE's records of the victim's forensic examination. The custodian of the medical records executed an affidavit authenticating the records, but she did not testify. Appellant objected during SANE Livermore's testimony to admission of the exhibit because it contained

medical records that were not part of the SANE examination and the proper predicate had not been laid. The documents were not filed with the trial court clerk although counsel acknowledged he had reviewed them pursuant to the State's open file policy. When questioned by trial counsel on voir dire, Livermore acknowledged she was the custodian of that portion of the medical records relating to the SANE examination but not the custodian of the remaining medical records.

The predicate for the business records exception to the hearsay rule may be established either by the custodian of the records or *another qualified witness*. (Emphasis added). Tex. R. Evid. 803(6). *See Williams v. State*, 176 S.W.3d 476, 484 (Tex.App.–Houston 2004, no pet.). The rule does not require that the witness be the person who made the record. We agree with counsel that the trial court did not abuse its discretion in admitting all the medical records contained in State's Exhibit 6 pursuant to the business records exception.

## IV. Legal and factual sufficiency of the evidence

Evidence is legally insufficient if, when viewed in a light most favorable to the prosecution, a rational trier of fact could not have found each element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Laster v. State*, No. PD-1276-07, 2009 WL 80226, at *2 (Tex.Crim.App. 2009). In conducting our factual sufficiency review, we must defer to the jury's findings and we cannot conclude that the conviction is factually insufficient simply

9

because we might disagree with the jury's verdict. *See Laster*, 2009 WL 80226, at *2; *See also Watson v. State*, 204 S.W.3d 404, 416-17 (Tex.Crim.App. 2006).

As charged, the State was required to prove that Appellant intentionally and knowingly sexually assaulted the victim by causing penetration of the victim's anus with his sexual organ without her consent. Tex. Penal Code Ann. § 22.011(a)(1)(A). Captain and Wipkey both testified that they witnessed Appellant having sex with the victim while she was unconscious and "lifeless." Wipkey testified that she observed Daily's child sleeping at the top of the bed while the victim was laying toward the bottom of the bed with Appellant standing up and holding her legs up. Captain testified there was "no doubt" about what he saw and also described Appellant having sex with the victim while propping her legs up in the air. There was also testimony that the victim had not shown Appellant any affection that evening. The victim testified that she had no relationship with Appellant and she did not consent to having sex with him. Additionally, the rectal swab from the rape exam confirmed that Appellant was a contributor of DNA.

The only witness to testify for the defense during guilt/innocence was Appellant's girlfriend with whom she shared a child. According to her testimony, at approximately 3:30 or 4:00 a.m., she drove to Daily's house to pick up Appellant and his friends. When she arrived, they were sitting on the front porch drinking with Captain. She did not enter the house and did not see Appellant enter either. She denied calling Daily several days later

to ask her to convince the victim to drop the charges and claimed she did not become aware of the charges until months later.

During closing arguments, trial counsel theorized that Captain was the perpetrator and that after he assaulted the victim, she became immobile and he and his friends "panicked" and called the police. Based on the standards of review, however, we agree with counsel that the evidence is legally and factually sufficient to support Appellant's conviction.

## V.  Ineffective assistance of counsel[5]

Harold Williams ("Johnny"), one of Appellant's friends who was at Daily's house during the incident, was not subpoenaed to testify. This, Appellant urges, denied him the right to effective assistance of counsel. We review a claim of ineffective assistance of counsel under the standard set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Ex parte Ellis*, 233 S.W.3d 324, 330 (Tex.Crim.App. 2007).

Although a motion for new trial was filed, ineffective assistance of counsel was not alleged and no hearing was held on the motion. Where the alleged dereliction is an error of omission de hors the record rather than commission revealed in the trial record, collateral attack may be the vehicle by which to develop a detailed record of the alleged ineffectiveness. *See Freeman v. State*, 125 S.W.3d 505, 506-07 (Tex.Crim.App. 2003).

---

[5]Counsel points out that this potential issue is presented at the behest of Appellant.

Initially, we note that trial counsel zealously represented Appellant. From voir dire through the punishment phase, counsel made numerous, detailed objections and also conducted vigorous cross-examination of the State's witnesses. There is nothing in the record to demonstrate what Williams's testimony would have been or how it would have benefitted Appellant. We will not speculate as to trial counsel's strategy in the face of a silent record. *See Stultz v. State*, 23 S.W.2d 198, 208 (Tex.App.–Houston [14th Dist.] 2000, pet. ref'd). Given the totality of the representation by trial counsel rather than an isolated act of omission, we agree with appellate counsel that a claim of ineffective assistance of counsel has no merit.

We have independently examined the entire record to determine whether there are any non-frivolous issues which might support the appeal. *See Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988); *In re Schulman*, 252 S.W.3d at 409; *Stafford v. State*, 813 S.W.2d 503, 511 (Tex.Crim.App. 1991). We have found no such issues. *See Gainous v. State*, 436 S.W.2d 137 (Tex.Crim.App. 1969). After reviewing the record and counsel's brief, we agree with counsel that there are no plausible grounds for appeal. *See also Bledsoe v. State*, 178 S.W.3d 824 (Tex.Crim.App. 2005).

Accordingly, counsel's motion to withdraw is granted and the trial court's judgment is affirmed.

Per Curiam

Do not publish.

12