NO. 07-08-0088-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MARCH 6, 2009

______________________________


BRANDON MARSAE HILL, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE


_________________________________

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 57,073-E; HONORABLE ABE LOPEZ, JUDGE

_______________________________

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
          Following a plea of not guilty, Appellant, Brandon Marsae Hill, was convicted by a
jury of sexual assault, enhanced, and punishment was assessed at twenty-one years
confinement and a $500 fine. In presenting this appeal, counsel has filed an Anders


 brief
in support of a motion to withdraw. We grant counsel’s motion and affirm.
          In support of her motion to withdraw, counsel certifies she has conducted a
conscientious examination of the record and, in her opinion, the record reflects no
potentially plausible basis to support an appeal. Anders v. California, 386 U.S. 738, 744-45, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); In re Schulman, 252 S.W.3d 403, 406
(Tex.Crim.App. 2008). Counsel has discussed why, under the controlling authorities, the
appeal is frivolous. See High v. State, 573 S.W.2d 807, 813 (Tex.Crim.App. 1978). 
Counsel has also demonstrated that she has complied with the requirements of Anders
and In re Schulman by (1) providing a copy of the brief to Appellant, (2) notifying him of his
right to file a pro se response if he desired to do so, and (3) informing him of his right to file
a pro se petition for discretionary review. In re Schulman, 252 S.W.3d at 408.


 By letter,
this Court granted Appellant thirty days in which to exercise his right to file a response to
counsel’s brief, should he be so inclined. Id. at n.23. Appellant did not file a response. 
Neither did the State favor us with a brief.
Background Facts
          In the evening hours of August 12, 2006, the victim and some friends gathered for
drinks at the home of Candice Daily.


 The victim became intoxicated. Nevertheless, she
insisted on going to an after hours club in the early morning hours of August 13. Her
friend, Richy Captain, drove her there and others followed in their vehicles. Appellant and
two of his friends, Ryhan Johnson and Harold Williams (“Johnny”), met the group there. 
The victim was very intoxicated and feeling sick and Captain decided to drive her back to
Daily’s house. According to Captain, the victim was staggering and fell while trying to get
into the car.
          Captain testified that when they arrived at Daily’s house, he carried her in and took
her to the back bedroom. A group was still gathered on Daily’s porch drinking. The victim
asked to use the bathroom and then Daily undressed her and put her in shorts and a shirt. 
The victim was placed in bed to sleep off her intoxicated state. According to several
witnesses, the victim was passed out, non-responsive, and appeared “lifeless.” Daily’s
three year old child was also in the back bedroom on the bed with the victim. 
          A former co-worker and friend of the victim’s, Lacy Wipkey, testified that she went
to the bedroom to check on her friend and witnessed Appellant having sexual intercourse
with the victim. She immediately alerted Captain, who proceeded to the bedroom and also
observed Appellant having sex with the victim. Captain testified that the victim was not
awake or responsive. Stunned and visibly upset, he left the bedroom to collect his
thoughts. Captain then returned to the bedroom where he witnessed Appellant’s friend
Johnson having sex with the victim while Appellant was still in the room. He escorted them
out and locked the bedroom door. Appellant went out on the front porch, and Captain and
Johnson argued in the kitchen. 
          Approximately ten minutes later, Daily came from the bedroom demanding everyone
leave because she discovered Johnson having sex with the victim. The back window was
open and the screen had been ripped off. She immediately threw everyone out of her
house, except for Captain, Wipkey, and another friend, and called the police.
          When the police arrived, Officer Scott Acker attempted to wake the victim by
shaking her several times and performing a sternum rub.


 According to the officer, she
never responded to the procedure. Later, while he was questioning people, the victim
“popped up off the bed and hit the wall and was trying to hold herself up between the wall
and the bed.” He called paramedics to respond to a possible alcohol poisoning and rape
exam. The victim was taken to the hospital.
          During questioning by Officer Acker, Captain, Wipkey, and Daily identified Appellant
and Johnson as the persons who had sex with the victim. When contacted by the officer,
the sexual assault nurse examiner (SANE) on duty at the hospital when the victim was
brought in, explained that she was unable to start the rape exam because the victim was
too intoxicated to consent. Her blood alcohol level was .32 and she had been given
intravenous fluids to hydrate her and sober her up.
          Hours later, at approximately 9:15 a.m., when Danielle Livermore was on duty as
the SANE, the victim consented to the rape exam. Among other items, Livermore collected
forensic evidence from the victim’s vaginal and rectal area. A forensic scientist with the
Texas Department of Public Safety who tested the evidence testified that, to a reasonable
degree of scientific certainty, Appellant was a DNA contributor on the anal swab and
Johnson was a DNA contributor on the vaginal swab.
          The victim and others testified that the victim did not have a relationship with
Appellant and in fact, she did not know him. The victim also testified that she remembered
being drunk and feeling sick at the after hours club. After she was taken back to Daily’s
house, she had a lucid moment and recalled going to the bathroom. She also remembered
seeing Captain and Daily there. Her next memory was waking up in the hospital and Nurse
Livermore asking if she could perform a rape exam, to which she consented.
          Appellant was indicted for intentionally and knowingly causing the penetration of the
anus of the victim with his sexual organ without her consent. After he was convicted by a
jury, he appealed and his appellate attorney pursued this Anders appeal.
          By the Anders brief, counsel presents five potential issues and then explains why
no reversible error exists. The issues are whether: (1) Appellant’s constitutional and
statutory rights were violated by the prosecutor’s comments during voir dire regarding his
right to remain silent; (2) Appellant’s DNA sample was properly seized and admitted into
evidence; (3) State’s Exhibit 6, which contains the victim’s medical records, was properly
admitted; (4) whether the evidence is legally and factually sufficient to support Appellant’s
conviction; and (5) whether trial counsel rendered ineffective assistance in failing to
subpoena Harold Williams (“Johnny”).
Potential Issues
I. Prosecutor’s comments during voir dire on a defendant’s failure to testify
          During voir dire, the prosecutor commented:
I guess the basis of the question is, is there a way that I can get to that level
in a case proving to you all of the elements if you never hear from the
Defense? Or do you say, gosh, I’ve got to hear from him. I want to know his
side?
* * *
why wouldn’t somebody want to take the stand and talk about their case?
 
 
          At that moment, defense counsel objected based on the United States Constitution
and the prosecutor was asked to rephrase. He continued:
[w]hy would somebody choose to exercise their right? You understand it’s
not a definite prohibition. We don’t say you can’t take the stand. We say
you have the right to exercise. You can say, I don’t want to take the stand. 
Right?
 
Defense counsel again objected, and the trial court overruled the objection.
          A prosecutor’s comment that refers to an accused’s failure to testify violates the
accused’s Fifth Amendment right against self-incrimination. Griffin v. California, 380 U.S.
609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); Bustamante v. State, 48 S.W.3d 761, 765
(Tex.Crim.App. 2001). However, to violate that right, the offending language must be
viewed from the jury’s standpoint and the implication that the comment referred to the
defendant’s failure to testify must be clear. Bustamante, 48 S.W.3d at 764. It is not
sufficient that the language might be construed as an implied or indirect allusion. Id. The
test is whether the language used was manifestly intended or was of such a character that
the jury would necessarily and naturally take it as a comment on the defendant’s failure to
testify. Id. 
          Comments such as those from the prosecutor in the instant case, which occur prior
to testimony in the case being closed, cannot be held to refer to a failure to testify which
has not yet occurred. See Reynolds v. State, 744 S.W.2d 156, 160 (Tex.App.–Amarillo
1987) (citing McCarron v. State, 605 S.W.2d 589, 595 (Tex.Crim.App. 1980)). Because
the comments by the prosecutor were made during voir dire, he could not have known
whether Appellant was going to testify. See McCary v. State, 477 S.W.2d 624, 627
(Tex.Crim.App. 1972). We agree with counsel’s assessment of this issue.
II. Appellant’s DNA sample was properly seized and admitted into evidence
          While Appellant was in jail, samples of his DNA were seized pursuant to a search
warrant for “personal property.” Trial counsel filed a motion to quash alleging that fluids,
saliva, and blood are not “personal property” that may properly be seized pursuant to
chapter 18 of the Texas Code of Criminal Procedure. Article 18.02 of the Code authorizes
a search warrant for “property” and also for “items.” See id. at (1) and (10). Although it
may have been more appropriate to describe the fluids as “items,” the statute authorizes
seizure of either as evidence. The search warrant’s reference to Appellant’s fluids as
“property” rather than “items” did not affect the adequacy of the description or otherwise
render the warrant invalid. See Falco v. State, No. 03-08-00206-CR, 2009 WL 349141,
at *3 (Tex.App.–Austin Feb. 11, 2009, no pet. h.). We agree with counsel that the seizure
of Appellant’s fluids pursuant to a valid search warrant presents no reversible error.
III. State’s Exhibit 6 was properly admitted
          State’s Exhibit 6 contains, among other medical records of the victim, the SANE’s
records of the victim’s forensic examination. The custodian of the medical records
executed an affidavit authenticating the records, but she did not testify. Appellant objected
during SANE Livermore’s testimony to admission of the exhibit because it contained
medical records that were not part of the SANE examination and the proper predicate had
not been laid. The documents were not filed with the trial court clerk although counsel
acknowledged he had reviewed them pursuant to the State’s open file policy. When
questioned by trial counsel on voir dire, Livermore acknowledged she was the custodian
of that portion of the medical records relating to the SANE examination but not the
custodian of the remaining medical records. 
          The predicate for the business records exception to the hearsay rule may be
established either by the custodian of the records or another qualified witness. (Emphasis
added). Tex. R. Evid. 803(6). See Williams v. State, 176 S.W.3d 476, 484
(Tex.App.–Houston 2004, no pet.). The rule does not require that the witness be the
person who made the record. We agree with counsel that the trial court did not abuse its
discretion in admitting all the medical records contained in State’s Exhibit 6 pursuant to the
business records exception.
IV. Legal and factual sufficiency of the evidence
          Evidence is legally insufficient if, when viewed in a light most favorable to the
prosecution, a rational trier of fact could not have found each element of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 2789,
61 L.Ed.2d 560, 573 (1979); Laster v. State, No. PD-1276-07, 2009 WL 80226, at *2
(Tex.Crim.App. 2009). In conducting our factual sufficiency review, we must defer to the
jury’s findings and we cannot conclude that the conviction is factually insufficient simply
because we might disagree with the jury’s verdict. See Laster, 2009 WL 80226, at *2; See
also Watson v. State, 204 S.W.3d 404, 416-17 (Tex.Crim.App. 2006).
          As charged, the State was required to prove that Appellant intentionally and
knowingly sexually assaulted the victim by causing penetration of the victim’s anus with his
sexual organ without her consent. Tex. Penal Code Ann. § 22.011(a)(1)(A). Captain and
Wipkey both testified that they witnessed Appellant having sex with the victim while she
was unconscious and “lifeless.” Wipkey testified that she observed Daily’s child sleeping
at the top of the bed while the victim was laying toward the bottom of the bed with
Appellant standing up and holding her legs up. Captain testified there was “no doubt”
about what he saw and also described Appellant having sex with the victim while propping
her legs up in the air. There was also testimony that the victim had not shown Appellant
any affection that evening. The victim testified that she had no relationship with Appellant
and she did not consent to having sex with him. Additionally, the rectal swab from the rape
exam confirmed that Appellant was a contributor of DNA.
          The only witness to testify for the defense during guilt/innocence was Appellant’s
girlfriend with whom she shared a child. According to her testimony, at approximately 3:30
or 4:00 a.m., she drove to Daily’s house to pick up Appellant and his friends. When she
arrived, they were sitting on the front porch drinking with Captain. She did not enter the
house and did not see Appellant enter either. She denied calling Daily several days later
to ask her to convince the victim to drop the charges and claimed she did not become
aware of the charges until months later.
          During closing arguments, trial counsel theorized that Captain was the perpetrator
and that after he assaulted the victim, she became immobile and he and his friends
“panicked” and called the police. Based on the standards of review, however, we agree
with counsel that the evidence is legally and factually sufficient to support Appellant’s
conviction.
V. Ineffective assistance of counsel



          Harold Williams (“Johnny”), one of Appellant’s friends who was at Daily’s house
during the incident, was not subpoenaed to testify. This, Appellant urges, denied him the
right to effective assistance of counsel. We review a claim of ineffective assistance of
counsel under the standard set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct.
2052, 80 L.Ed.2d 674 (1984); Ex parte Ellis, 233 S.W.3d 324, 330 (Tex.Crim.App. 2007). 
          Although a motion for new trial was filed, ineffective assistance of counsel was not
alleged and no hearing was held on the motion. Where the alleged dereliction is an error
of omission de hors the record rather than commission revealed in the trial record,
collateral attack may be the vehicle by which to develop a detailed record of the alleged
ineffectiveness. See Freeman v. State, 125 S.W.3d 505, 506-07 (Tex.Crim.App. 2003). 
          Initially, we note that trial counsel zealously represented Appellant. From voir dire
through the punishment phase, counsel made numerous, detailed objections and also
conducted vigorous cross-examination of the State’s witnesses. There is nothing in the
record to demonstrate what Williams’s testimony would have been or how it would have
benefitted Appellant. We will not speculate as to trial counsel’s strategy in the face of a
silent record. See Stultz v. State, 23 S.W.2d 198, 208 (Tex.App.–Houston [14th Dist.]
2000, pet. ref’d). Given the totality of the representation by trial counsel rather than an
isolated act of omission, we agree with appellate counsel that a claim of ineffective
assistance of counsel has no merit.
           We have independently examined the entire record to determine whether there are
any non-frivolous issues which might support the appeal. See Penson v. Ohio, 488 U.S.
75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988); In re Schulman, 252 S.W.3d at 409; Stafford
v. State, 813 S.W.2d 503, 511 (Tex.Crim.App. 1991). We have found no such issues. 
See Gainous v. State, 436 S.W.2d 137 (Tex.Crim.App. 1969). After reviewing the record
and counsel’s brief, we agree with counsel that there are no plausible grounds for appeal. 
See also Bledsoe v. State, 178 S.W.3d 824 (Tex.Crim.App. 2005).
          Accordingly, counsel's motion to withdraw is granted and the trial court’s judgment
is affirmed. 
                                                                           Per Curiam

                                                                                                                                    

Do not publish.